# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LABORERS' LOCAL #231 PENSION FUND | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 17-478 |
| RORY J. COWAN, *et al* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                                                             March 13, 2018

A shareholder challenging proxy disclosures under federal securities law must plead the specific disclosures violating the securities laws. As recently instructed by our court of appeals, when the proxy discloses the specific information given to the directors' financial advisor and then discloses the financial advisor's projections as a matter of fact with several disclaimers, a shareholder cannot transform the securities law mandate of disclosure into challenging whether the directors should have given more information to the financial advisor. The directors' proxy disclosure of the specific information given to the advisor is fact-based. It either happened as represented or it did not. Today we review a shareholder's challenge to the directors' disclosure of information given to the financial advisor to prepare projections and then copied into a proxy statement. The shareholder does not challenge other misleading statements in the proxy. With several disclaimers, the proxy's representation of giving financial information to the advisor and then disclosing the advisor's projections is a true statement. We decline to transform the disclosure of the information given to the advisor and the advisor's resultant projections reported in the proxy into a fiduciary obligation of disclosing all aspects of the assumptions which possibly should or could have been given to the advisor particularly with lengthy and specific disclaimers under the securities law. The disclosures challenged today do not state a federal securities claim and we grant the motion to dismiss in the accompanying Order.

I.   **Facts alleged in the amended complaint.**

Lionbridge Technologies, Inc. sells worldwide translation and localization, digital marketing, global content management, and application testing services.[1] For several years, Lionbridge pursued an acquisition growth strategy as confirmed to investors through media reports and its annual report to shareholders.[2] For example, in 2015, Lionbridge acquired two companies touting they "significantly expanded Lionbridge's capabilities" and would accelerate its growth.[3] In 2016, Lionbridge completed a major reorganization for the purpose of facilitating its acquisition growth strategy.[4] Lionbridge shifted from a "functional organization" divided between sales, operations, and technology to a "strategic business unit" structure.[5] Lionbridge Chairman, CEO, and President Rory Cowan explained the reorganization allowed Lionbridge to more easily "plug in smaller acquisitions" into focused business units and facilitated the acquisitions' integration into Lionbridge.[6] Mr. Cowan further explained Lionbridge implemented the reorganization and acquisition strategy in hopes of getting Lionbridge "to the $1 billion . . . level over the coming years."[7]

While pursuing its acquisition strategy, Lionbridge also began reviewing inquiries from potential acquirers in early 2016.[8] Lionbridge's board elected a special committee of three independent directors to consider its potential sale, investigate alternatives, negotiate terms with potential acquirers, and make recommendations regarding the potential transactions.[9]

HIG Capital LLC expressed interest in acquiring Lionbridge in late 2016.[10] HIG wanted to merge Lionbridge into one of its affiliates. Several potential acquirers, including HIG's affiliates, represented they would retain Lionbridge's existing management team after completing the proposed merger.[11] In December 2016, Lionbridge signed a plan of merger

agreement with HIG affiliates LBT Acquisition, Inc. and LBT Merger Sub, Inc.[12] The agreement described HIG's offer of $5.75 for each Lionbridge share.[13]

Lionbridge retained Union Square Advisors LLC to opine on the fairness of the proposed merger with the HIG affiliates.[14] Lionbridge gave Union Square its financial forecasts, and to the extent available, the 2016 and 2017 available financial results.[15] Union Square used this information to assist in preparing Lionbridge's financial projections for 2018 through 2020.[16] Lionbridge approved Union Square's use of the 2018 through 2020 projections in analyzing the proposed merger.[17]

We today review a shareholder's challenge of specific disclosures in the January 31, 2017 definitive proxy statement filed with the Securities and Exchange Commission and sent to Lionbridge's shareholders seeking approval of the merger with the HIG affiliate.[18] Lionbridge's proxy statement included Union Square's summary chart of the 2016 through 2020 projections.[19] Lionbridge told its shareholders it developed the projections "under the assumption of continued standalone operation as a publicly-traded company and did not give effect to any changes or expenses as a result of the merger or any effects of the merger."[20] The financial projections estimated Lionbridge's revenues would grow from $550 million to $641 million by 2020.[21] The projections contemplated revenue growth of approximately 3.9% per year for the next several years.[22] Based on the information given to it, Union Square concluded HIG's $5.75 per share offer fell within the range of fairness.[23] The $5.75 offered share price represented a 3.2% premium on Lionbridge's share price immediately before Lionbridge entered into the merger agreement.[24]

3

Following the filing of at least two shareholders' suits challenging the HIG acquisition[25], a majority of Lionbridge's shareholders voted in favor of the merger.[26] Lionbridge, LBT Acquisition, and LBT Merger Sub completed the merger the same day.[27]

Three days after its shareholders approved the merger and the merger closed, Lionbridge announced its acquisition of Exequo.[28] Lionbridge's Vice President of Corporate Development and Investor Relations explained its Exequo acquisition underscored HIG's support for Lionbridge's acquisition growth strategy.[29]

## II. Analysis

Pension Fund now sues HIG, LBT Acquisition, LBT Merger Sub, Lionbridge, and Lionbridge's board of directors and executives alleging the January 31, 2017 proxy violated the Securities Exchange Act of 1934 and its implementing regulations. Pension Fund claims the proxy statement contained materially false and misleading statements and omissions.[30] Pension Fund also claims HIG, its affiliates, and Lionbridge's board and executives are "controlling persons" as defined under Section 20(a) of the '34 Act[31] and should be held liable for the misleading statements and omissions.

HIG, its affiliates, Lionbridge, and Lionbridge's board and executives move to dismiss the amended complaint. They argue the proxy statement did not contain material false or misleading statements or omissions. They also argue the statements and omissions relate to forward-looking statements accompanied by cautionary language and are not actionable under the safe harbor found in the Private Securities Litigation Reform Act[32] and the "bespeaks caution" doctrine. Finally, they argue Pension Fund failed to plead a claim against HIG, LBT Acquisition, LBT Merger Sub and Lionbridge Senior Vice President Finance and Chief Financial Officer Marc Litz.

4

### A. Pension Fund fails to plead a misleading or false statement or omission under Section 14(a).

Pension Fund alleges specific nondisclosures violate the securities laws. First, Pension Fund claims the projections table included in the "Projected Financial Information" section of the proxy statement is materially misleading because the projections did not incorporate anticipated growth through Lionbridge's acquisition strategy. Second, Pension Fund claims the financial projections did not incorporate the financial impact of the Exequo acquisition completed days after Lionbridge's merger with LBT Merger Sub. Third, Pension Fund claims four statements relating to the assumptions underlying the projections are misleading and false, including the statement the projections "were developed under the assumption of continued standalone operation as a publicly traded company and did not give effect to any changes or expenses as a result of the merger or any effects of the merger." Pension Fund claims the assumptions are misleading because Lionbridge omitted the fact the financial projections did not incorporate Lionbridge's acquisition strategy.

Defendants argue the projections cited by Pension Fund cannot be interpreted as a statement of fact regarding management's expectations for the future. Rather, Lionbridge included the projections to provide the voting shareholders with the same projections Lionbridge management and Union Square used in evaluating the potential merger.

Pension Fund invokes our subject matter jurisdiction and limits its claim based on specific disclosures which allegedly violate federal securities law. It does not allege breach of fiduciary duty under Delaware Law. "[T]he fundamental purpose of the Securities Exchange Act is to implement 'a philosophy of full disclosure;' once full and fair disclosure has occurred, the fairness of the terms of the transaction is beyond the scope of the Act."[33] A breach of fiduciary

duty unaccompanied by misrepresentation, nondisclosure, or deception, does not violate the '34 Act.[34]

Section 14(a) of the '34 Act prohibits any person "in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered pursuant to section 12."[35] "Section 14(a) seeks to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations."[36] Securities and Exchange Commission Rule 14a-9 provides "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . ."[37] "To be actionable under Rule 14a–9, 'a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.'"[38] The filer of a proxy statement is not obligated to predict the future, unless the filer has reason to believe a future event will occur.[39]

To plead a Section 14(a) violation, Pension Fund must allege "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."[40] An omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered

the 'total mix' of information made available."[41]  Scienter is not an element of a Section 14(a) claim.[42]

Our court of appeals instructs us claims sounding in fraud brought under Section 14(a) are subject to the heightened pleading standards found in the Private Securities Litigation Reform Act.[43]  Under the heightened standard, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[44]  The Reform Act is designed to restrict abuses of class action securities litigation.[45]  The Reform Act mandates we dismiss a complaint failing to meet the heightened pleading requirements.[46]

Under the '34 Act and Reform Act, we limit our review to the statements alleged to be false or misleading in Pension Fund amended complaint.  We express no opinion on any other statement in the proxy statement filed by Lionbridge on January 31, 2017. Limiting our analysis to the Pension Fund's challenge, we find the specifically challenged statements are not misleading.

In *OFI Asset Mgmt. v. Cooper Tire & Rubber*,[47] our court of appeals affirmed the dismissal of a complaint based on alleged misleading financial projections included in a proxy statement.[48]  The plaintiff in *OFI Asset* alleged the proxy statement contained materially false and misleading financial projections because the projections did not provide accurate estimates of the defendant's future revenue and operating profits.[49]  The shareholder alleged the management team created updated financial projections before filing the proxy statement but only included the older projections.[50]  The court found the financial projections did not stand

7

alone as a statement of affirmative fact, rather the defendant accompanied the projections with "a lengthy and specific disclaimer."[51]

The disclaimer stated, "[The] financial projections set forth below are included in this proxy statement only because this information was provided to the [potential acquirer] . . . in connection with a potential transaction involving [the defendant] . . . *You should not regard the inclusion of these projections in this proxy statement as an indication that* [the defendant], [the potential acquirer], [or other relevant parties] *considered or consider the projections to be necessarily predictive of actual future events, and you should not rely on the projections as such.*"[52] The disclaimer listed the defendant's financial advisor as having received the projections during the negotiation process, as well.[53] The financial advisor used the projections to form a fairness opinion regarding the potential merger.[54] The proxy statement also labelled the projections as "outdated" and explained the defendant did not intend to update the projections.[55]

The court concluded "[t]he projections are plainly not included as statements of fact. Instead, the only relevant statement of fact is that the projections were, in fact, the projections that [the defendant] provided to [the potential acquirer] and the financing bank during the negotiation of the deal."[56] Because the plaintiff did not allege the projections included in the proxy statement were different from what the defendant provided to the potential acquirer and its financial advisor, the plaintiff did not plead an actionable false or misleading statement under the '34 Act.[57]

The court also found the projections covered under the Reform Act's safe harbor for forward-looking statements.[58] The court cited the fact the preamble to the projections identified them as forward-looking, included a warning describing the projection as "outdated," and

8

explained no party involved considered the projections to be "predictive of actual future events."[59]

As in *OFI Asset Mgmt.*, Lionbridge accompanied its financial projections with "a lengthy and specific disclaimer." Close to the disclaimer analyzed in *OFI Asset Mgmt.*, Lionbridge explained the financial projection "is included solely to give the Lionbridge stockholders access to certain financial projections that were made available to the Special Committee, our Board of Directors and Union Square, and is not included in this proxy statement to influence a Lionbridge stockholder's decision whether to vote for the merger agreement or for any other purpose."[60] Lionbridge's disclaimer further provides, "The inclusion of the selected elements of the forecasts in the table and accompanying narrative above should not be regarded as an indication that Lionbridge and/or any of our affiliates, officers, directors, advisors or other representatives consider the forecasts to be predictive of actual future events, and this information should not be relied upon as such."[61] The disclaimer also warns shareholders Lionbridge and its advisors "undertake no obligation to update or otherwise revise or reconcile the forecasts to reflect the circumstances existing after the dates on which the forecasts were prepared or to reflect the occurrence of future events, even in the event that any or all of the assumptions and estimates underlying the forecasts are shown to be in error."[62] The disclaimer ends with a final instruction, "In light of the foregoing factors and the uncertainties inherent in the forecasts, Lionbridge stockholders are cautioned not to place undue, if any, reliance on the forecasts."[63]

Lionbridge included the projections cited by Pension Fund in the proxy statement for the purpose of providing the voting shareholders with information Lionbridge's board, special committee, and financial advisor used to assess the potential merger. Based on the disclaimer

accompanying the projections, the only relevant statement of fact a shareholder may draw from the inclusion of the projections is Lionbridge provided the same projections to its special committee of independent directors and to Union Square in assessing the proposed merger with LBT Merger Sub.

Pension Fund claims the projections are materially misleading because they fail to incorporate potential growth through Lionbridge's acquisition strategy. Pension Fund alleges Lionbridge experienced compound annual revenue growth of 7% from 2011 to 2015.[64] In 2016, Lionbridge disclosed a preliminary outlook for fiscal year 2017 estimating its year-on-year revenue growth to be 4%-6%.[65] Pension Fund also alleges Lionbridge's Chairman and CEO stated his intention to make Lionbridge a $1 billion company in the near future, largely through acquisitions.[66] But the projections included in the proxy statement provided for a compound annual growth rate of around 3.9%.[67] Pension Fund accounts for the reduced growth rate estimate of 3.9% by alleging Lionbridge failed to incorporate potential growth through acquisitions.

Even assuming Pension Fund alleged sufficient facts to attribute the reduction in Lionbridge's growth estimates to its failure to include estimated growth through its acquisition strategy, Pension Fund does not allege a false or misleading statement based on the projections. Pension Fund does not allege how the omission of potential growth through an acquisition strategy is materially misleading or false based on the information reported to Union Square. Pension Fund does not allege Lionbridge's board did not provide the projections to its special committee, or financial advisor. Whether the projection incorporated the acquisition strategy does not negate Lionbridge's representation it provided the same projection to others involved in assessing the merger. The representation in the proxy statement is true. Pension Fund's claim

the Defendants should have told Union Square more information may have been or could have been part of the pre-merger Chancery Court litigations, but this "should have disclosed" is not part of the plead Section 14 claim here.

For the same reason, Pension Fund's claim fails to the extent it relies on the alleged exclusion of the Exequo acquisition from the projections. Pension Fund does not allege how this renders the statement the projections were available to Lionbridge and Union Square in assessing the merger false or misleading under Section 14(a).[68] Because Pension Fund does not allege the projections included in the proxy statement are not the same projections provided to Lionbridge's board and Union Square in assessing the proposed merger, Pension Fund does not state a claim under 14(a) based on the projections.[69]

Pension Fund claims the assumptions underlying the projections are false and misleading because the projections did not incorporate Lionbridge's acquisition growth strategy. Directed by our court of appeals in *OFI Asset Mgmt*, we analyze only the statements alleged to be false and misleading in Pension Fund's amended complaint. Pension Fund alleges four statements relating to the underlying assumptions of the financial projections as false or misleading. Specifically, Pension Fund cites the Defendants' statement the projections "were developed under the assumption of continued standalone operation and did not give effect to any changes or expenses as a result of the merger or any effects of the merger."; "The forecasts . . . were based on numerous variables and assumptions that necessarily involve judgments with respect to, among other things, future economic, competitive and regulatory conditions and financial market conditions . . ."; "The forecasts also reflect assumptions as to certain business decisions that are subject to change . . ."; and finally, "The forecasts also reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on actual

11

results, revised prospects for our business, changes in business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared."

Pension Fund's claim fails for the same reason its claim based on the projection numbers failed. Pension Fund does not identify how these assumptions render the statement of fact the same projections were provided to Lionbridge's board and Union Square is materially false or misleading. Allowing Pension Fund to backdoor a claim based on the projections by alleging false and misleading assumptions would allow Pension Fund to wholly bypass our court of appeals' decision in *OFI Asset Mgmt*. Pension Fund's claim based on the projections' assumptions is equivalent to its claim based on the numbers. Even assuming it is true the assumptions do not reflect Lionbridge's acquisition strategy, it would not negate the representation by Lionbridge it provided the same projections based on the same purported assumptions to its board, special committee and financial advisor. Pension Fund does not allege Lionbridge provided different projections to its board, special committee, or financial advisor. Based on our liberal reading of Pension Fund's amended complaint, Lionbridge provided the same allegedly flawed projections to its board, special committee, and financial advisors as it did to its shareholders.[70] Pension Fund now seeks to hold Lionbridge's board and others liable for failing to provide accurate projections. This theory is not viable under our court of appeals' guidance in *OFI Asset Mgmt*. If it did, we would be recognizing a claim challenging the board's adherence to the fiduciary duties of loyalty, candor and care in the context of a 14(a) claim. We decline to transform Section 14(a) focusing on disclosure into a second shot at a fiduciary duty claim for failing to disclose information to the financial advisor. This may be a claim in Chancery Court but we do not see a viable claim under Section 14(a) after *OFI Asset Mgmt*.

Pension Fund fails to allege a false or misleading statement in the proxy statement under Section 14(a).

### B. Pension Fund's Section 20(a) claim fails because it does not allege an underlying violation of the '34 Act.

Pension Fund claims Lionbridge's board members and executives and HIG, LBT Acquisition, and LBT Merger Sub are liable for the alleged false and misleading statements and omissions as "controlling persons" under Section 20(a). Section 20(a) of the '34 Act imposes liability on every person who controls any person liable under any provision of the '34 Act.[71] A Section 20(a) claim is predicated on an underlying '34 Act violation.[72] Because we find Pension Fund does not allege a Section 14(a) violation, Pension Fund Section 20(a) claim fails.[73]

## III. Conclusion

We dismiss Pension Fund's Section 14(a) claim for failure to allege a misleading or false statement or omission in the proxy statement. The challenged statements are true as stated. We dismiss Pension Fund's Section 20(a) as Pension Fund fails to plead Defendants violated the '34 Act. In the accompanying Order, we grant the Defendants' motion to dismiss the amended complaint.

---

[1] ECF Doc. No. 13 ¶ 12.

[2] *Id.* ¶ 54.

[3] *Id.* ¶ 55.

[4] *Id.* ¶ 58.

[5] *Id.*

[6] *Id.*

[7] *Id.*

13

[8] *Id.* ¶ 38.

[9] *Id.* ¶ 40.

[10] *Id.* at ¶ 24.

[11] *Id.* ¶¶ 42-43.

[12] *Id.* ¶ 1.

[13] *Id.*

[14] *Id.* ¶ 65.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Laborers' Local #231 Pension Fund ("Pension Fund") owned over 4,000 Lionbridge shares. *Id.* ¶ 11.

[19] *Id.* ¶¶ 65-66.

[20] *Id.* ¶ 65.

[21] *Id.* ¶ 67.

[22] *Id.*

[23] *Id.* ¶ 70.

[24] *Id.*

[25] In evaluating a motion to dismiss, we may consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

The public record confirms we are reviewing the third Lionbridge shareholder challenge to the HIG merger. Lionbridge shareholders, including Pension Fund, sued to enjoin or alter this merger in the Chancery Court challenging the directors' disclosures made in the proxy statement twice before the merger. On January 13, 2017, a Lionbridge shareholder filed a class action hoping to enjoin the HIG merger claiming a preliminary January 5, 2017 proxy statement omitted material information including regarding "Lionbridge's financial projections and the analyses performed by Lionbridge's financial advisor… Union Square in support of its so-called

fairness opinion." Verified Class Action Compl., ¶ 52, *Paul Parshall v. Lionbridge Techs., Inc., et al.*, No. 2017-0022 (Jan. 13, 2017).

On February 28, 2017, Pension Fund sued Lionbridge in the Court of Chancery. Verified Compl. to Compel Books and Records under 8 Del. C. § 220, *Laborers' Local #231 Pension Fund v. Lionbridge Techs., Inc.*, No. 2017-151 (Feb. 28, 2017). Pension Fund sought books and records alleging HIG's offer of $5.75 per share described in the proxy statement undervalues Lionbridge and "the opportunity to participate in Lionbridge's expected long-term growth will be taken away from them and handed to HIG for what is clearly an unfair price." *Id*. ¶ 28.

[26] ECF Doc. No. 13 ¶ 7.

[27] *Id*.

[28] *Id*.

[29] *Id*. ¶ 74.

[30] 15 U.S.C. § 78n(a).

[31] 15 U.S.C. § 78t(a).

[32] 15 U.S.C. § 78u-5.

[33] *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 638 (3d Cir. 1989) (citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477-78 (1977)).

[34] *Id*.

[35] 15 U.S.C. § 78n(a)(1).

[36] *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) (citing *Shaev v. Saper*, 320 F.3d 373, 379 (3d Cir. 2003)).

[37] 17 C.F.R. § 240.14a-9.

[38] *Tracinda Corp. v. Daimler Chrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir.2002)).

[39] *In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1330 (citation omitted).

[40] *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)).

[41] *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (footnote omitted); *Shaev v. Saper*, 420 F.3d 373, 379 (3d Cir. 2003).

[42] *Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 143.

[43] *Id.* at 144; 15 U.S.C. § 78u-4(b)(1). Although Section 14(a) claims only require a showing of negligence, Pension Fund's amended complaint sounds in fraud. Pension Fund alleges HIG, its affiliates, and Lionbridge's board and executives knowingly provided false and misleading statements to its shareholders. ECF Doc. No. 13 at ¶¶ 69, 74, 81. Pension Fund alleges Lionbridge offered these false statements to allow its financial advisor to approve HIG's offered per share purchase price and in an effort to induce shareholders to vote in favor of the merger. *Id.* ¶¶ 70, 81. Pension Fund alleges Lionbridge's management team induced its shareholders' favorable vote because HIG offered the management team continued employment and allowed Mr. Cowan to rollover a portion of his Lionbridge stock into the surviving company's stock *Id.* ¶¶ 46, 51.

[44] 15 U.S.C. § 78u-4(b)(1).

[45] *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (citation omitted).

[46] 15 U.S.C. § 78u-4(b)(3)(A).

[47] 834 F.3d 481 (3d Cir. 2016).

[48] *Id.* at 505.

[49] *Id.* at 500.

[50] *Id.* at 500-01.

[51] *Id.* at 501.

[52] *Id.*

[53] *Id.* at 488; *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, No. 14-68, 2015 WL 4036179, at *6 (D. Del. Jul. 1, 2015).

[54] *OFI Asset Mgmt.*, 834 F.3d at 488.

[55] *Id.* at 501.

[56] *Id.*

[57] *Id*. Although the court conducted its analysis under Section 10(b) of the '34 Act, the court also found the plaintiff failed to allege a material misrepresentation under Section 14(a) for the same reasons articulated in its Section 10 analysis. *Id*. at 505.

[58] *Id*. at 501 n.21.

[59] *Id.* at 501.

[60] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 53 (Jan. 31, 2017). (ECF Doc. No. 17-1). Pension Fund did not attach the proxy statement at issue to its amended complaint. But we may take judicial notice of the January 31, 2017 proxy statement filed publicly with the Securities and Exchange Commission. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

[61] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 54 (Jan. 31, 2017). (ECF Doc. No. 17-1).

[62] *Id*.

[63] *Id*. The proxy statement also included a section titled "Special Note Regarding Forward-Looking Statements." *Id*. at iii. The special note listed potential factors which may influence Lionbridge's future financial results. *Id*. The note stated, "You should not rely on forward-looking statements because they involve known or unknown risks, uncertainties, and other facts, some of which are beyond our control. These risks, uncertainties, and other factors may cause our actual results, performance or achievements to be materially different from any future results, levels of activity, performance or achievements expressed or implied by the forward looking statements. . . . These forward-looking statements speak only as of the date on which the statements were made and are not guarantees of future results, levels of activity, performance or achievements. Except as may be required by applicable law, we do not intend to update and assume no obligation to update any forward-looking statements. All forward looking statements in this document and in documents incorporated by reference herein are qualified by this cautionary statement." *Id*.

[64] ECF Doc. No. 13 at ¶ 67.

[65] *Id*.

[66] *Id*.

[67] *Id*.

[68] To the extent Pension Fund claims the proxy statement is generally misleading because Lionbridge omitted any reference to the Exequo acquisition, Pension Fund's claim fails. Under Rule 14a-9 and the Reform Act, Pension Fund must identify the statement which is materially

misleading or false because of the alleged omission. 17 C.F.R. § 240.14a-9; 15 U.S.C. § 78u-4(b)(1).

[69] HIG, its affiliates, and Lionbridge's board and executives also argue the alleged false and misleading statements and omissions are not actionable under the Reform Act's safe harbor for forward looking statements. But unless specifically provided by rule, regulation or order of the Securities and Exchange Commission, the safe harbor does not apply to forward looking statements made in connection with a going private transaction. 15 U.S.C. § 78u-5(b)(1)(D). Neither side addressed this exclusion in their papers. Pension Fund alleged the merger between Lionbridge and LBT Merger Sub as a "going private buyout" resulting in Lionbridge becoming a private entity. ECF Doc. No. 13 at ¶ 2. Because Pension Fund does not allege an actionable statement or omission under Section 14(a), we need not address whether the alleged statements and omissions are subject to application of the Reform Act's safe harbor provision or whether the transaction at issue is a "going private transaction" under the Reform Act.

[70] Allegations of directors and executives providing false information to its financial advisors to receive a favorable fairness opinion to in turn induce its shareholders' favorable vote may sound in breach of fiduciary duty. Pension Fund does not plead a breach of fiduciary duty claim here. We express no opinion on the merits or possibility of a fiduciary duty claim.

[71] 15 U.S.C. § 78t(a).

[72] *See id.*

[73] *In re Aetna Sec. Litig.*, 617 F.3d 272, 285 (3d Cir. 2010).