## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LABORERS' LOCAL #231 PENSION FUND** | **: CIVIL ACTION** |
| | : |
| | : |
| **v.** | : |
| | **: NO. 17-478** |
| **RORY J. COWAN,** *et al* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                      **July 2, 2018**

Partially changing its theories of liability after we dismissed its first amended complaint, a shareholder now challenging disclosures in a proxy statement must plead specific facts giving rise to liability under the securities laws. As we opined in dismissing the shareholder's first attempt, claims based on projections with cautionary warnings or innuendo do not proceed into discovery for securities claims. While partially repeating these same allegations based on projections, the shareholder's second amended complaint now includes one allegation of a misleading statement in a January 2017 proxy statement which should proceed into discovery: a representation the corporation's board placed confidence in a financial advisor's analysis and opinion when the shareholder alleges the board's represented confidence conflicts with undisclosed facts held by the board concerning the accuracy or potential flaws in the financial advisor's analysis. The board's opinion describing the advisor's allegedly incomplete analysis as a "positive reason" for the proposed transaction is allegedly false because the board knew it provided faulty incomplete data to the advisor.   This one claim may proceed but the shareholder's remaining claims do not meet the pleading requirements under the securities law.

### I.    Facts alleged in the second amended complaint.

Delaware corporation Lionbridge Technologies, Inc. provides translation, localization, digital marketing, global content management, and application testing services to companies

around the world.[1] Since 2012, Lionbridge expanded through an acquisition based growth strategy.[2] Lionbridge highlighted its acquisition growth strategy in its annual reports to shareholders and told its shareholders it will continue making acquisitions as part of its long-term business strategy.[3] For example, in 2015, Lionbridge acquired two companies which Lionbridge publicly touted as significantly expanding its capabilities and accelerating its growth.[4] The same year, Lionbridge repurchased $50 million of its shares.[5] Rory J. Cowan, Lionbridge's chairman of the board, chief executive officer, and president, explained to shareholders the stock repurchase "underscor[ed] our ongoing confidence in the long-term financial success of Lionbridge" and Lionbridge would "continue to use [its] capital to fund growth both organically and by acquisitions."[6] Lionbridge senior vice president of finance and chief financial officer Marc Litz told shareholders Lionbridge had "ample flexibility to fund additional tuck-in acquisitions as appropriate."[7] Mr. Cowan told shareholders Lionbridge would grow through acquisitions beyond the technology sector in hopes to diversify Lionbridge's offerings.[8]

In 2016, Lionbridge continued assuring shareholders it would continue to grow through acquisitions.[9] The same year, Lionbridge completed a major reorganization to facilitate its acquisition growth strategy.[10] Before the reorganization, Lionbridge structured itself "functionally" into global sales, global operations, and global technology organizations.[11] Mr. Cowan explained to shareholders Lionbridge's earlier functional organization structure did not allow it to scale.[12] Lionbridge reorganized into nine "strategic business units."[13] Each business unit would be run by a general manager.[14] Mr. Cowan explained the strategic business unit structure best served "for an effective, targeted acquisition strategy."[15] He further explained Lionbridge strategic business units would be better tailored to "plug in" smaller acquisitions than its former functional organization structure.[16] Mr. Cowan believed having general managers for

2

each strategic business unit would allow new acquisitions to more quickly integrate into Lionbridge.[17] Mr. Cowan told shareholders Lionbridge underwent its reorganization so it could "get to the $1 billion . . . level over the coming years."[18]

In early 2016, while implementing its acquisition growth strategy, Lionbridge began fielding inquiries from private equity firms to purchase Lionbridge.[19] Lionbridge's board of directors met to discuss the offers and Lionbridge's long-term prospects.[20] Mr. Cowan provided the board with projections of Lionbridge's revenues.[21] The board created a special committee of three independent directors to consider the sale of Lionbridge, to assess alternatives to selling Lionbridge, to negotiate terms of a potential sale, and to make recommendations to the board.[22]

In mid-2016, HIG Capital, LLC expressed interest in acquiring Lionbridge.[23] As a private equity firm, HIG explained it valued skilled and experienced management teams and would retain Lionbridge's current management team, if it purchased Lionbridge.[24] Other interested potential acquirers expressed they would retain Lionbridge's management team, as well.[25] Lionbridge signed an exclusivity agreement with HIG to negotiate only with HIG through mid-December 2016.[26]

In mid-December 2016, Lionbridge and HIG finalized an agreement for HIG to purchase Lionbridge's shares at $5.75 per share.[27] Lionbridge's board, absent Mr. Cowan who abstained, approved the merger agreement with HIG.[28] The board and special committee cited "the ability to access capital to fund acquisitions" as a motivation to engage in preliminary discussions with potential acquirers and to ultimately merge with HIG.[29] Lionbridge announced the merger to its shareholders the next day.[30]

Lionbridge hired financial advisor Union Square Advisors LLC to assess the fairness of HIG's and other potential acquirers' offers.[31] Lionbridge gave Union Square financial

3

projections prepared by Lionbridge, and actual results to the extent available, for fiscal years 2016 and 2017.[32] Based on Lionbridge's projections and other information, Union Square prepared extrapolated financial projections for the years 2018 through 2020.[33] Lionbridge approved Union Square's use of the financial projections to assess the fairness of HIG's offer.[34] Union Square found HIG's offer of $5.75 to be fair consideration for a Lionbridge share.

In January 2017, Lionbridge filed a definitive proxy statement with the Securities and Exchange Commission.[35] In the proxy statement, Lionbridge's board unanimously recommended shareholders vote in favor of the proposed merger with HIG.[36] The proxy also included Lionbridge's and Union Square's financial projections from 2016 through 2020.[37] The proxy statement included a chart summarizing the projections. The projections showed Lionbridge anticipated its revenues to grow from $550 million in 2016 to $641 million in 2020.[38] The projections provided for a compound annual growth rate of 3.9%.[39] From 2011 through 2015, Lionbridge experienced compound annual growth of around 7%.[40] The projections estimated 2017 revenues at $572 million. In 2017, Lionbridge actually earned just under $600 million.[41]

Lionbridge included a summary of assumptions the projections are based on, including: the projections "were developed under the assumption of continued standalone operation as a publicly-traded company and did not give effect to any changes or expenses as a result of the merger or any effects of the merger"; "assumptions that necessarily involve judgments with respect to, among other things, future economic, competitive, and regulatory conditions"; "assumptions as to certain business decisions that are subject to change"; and a warning "the forecasts may be affected by our ability to achieve strategic goals."[42] Lionbridge also warned shareholders the forecasts "reflect assumptions that are subject to change . . . based on actual

4

results, revised prospects for our business, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared."[43]

In a disclaimer accompanying the projections and assumptions, Lionbridge explained the projections are "included solely to give the Lionbridge stockholders access to certain financial projections that were made available to the Special Committee, our Board of Directors and Union Square, and is not included in this proxy statement to influence a Lionbridge stockholder's decision whether to vote for the merger agreement or for any other purpose."[44] Lionbridge's disclaimer further provides, "The inclusion of the selected elements of the forecasts in the table and accompanying narrative above should not be regarded as an indication that Lionbridge and/or any of our affiliates, officers, directors, advisors or other representatives consider the forecasts to be predictive of actual future events, and this information should not be relied upon as such."[45] The disclaimer also warns shareholders Lionbridge and its advisors "undertake no obligation to update or otherwise revise or reconcile the forecasts to reflect the circumstances existing after the dates on which the forecasts were prepared or to reflect the occurrence of future events, even in the event that any or all of the assumptions and estimates underlying the forecasts are shown to be in error."[46] The disclaimer ends with a final instruction, "In light of the foregoing factors and the uncertainties inherent in the forecasts, Lionbridge stockholders are cautioned not to place undue, if any, reliance on the forecasts."[47]

Lionbridge cited the information it relied upon during its deliberations to merge with HIG.[48] Lionbridge reviewed its "business and financial prospects" if it remained "an independent, publicly-traded company . . . including forecasts of future financial performance set forth [in the disclosed projections]."[49] Lionbridge listed positive reasons to support the merger,

5

including its belief $5.75 per share price "provides greater certainty of value and less risk to such stockholders relative to the potential trading price of the shares over the long-term after accounting for the risks to our business resulting from operational execution risk and evolving industry dynamics, including out ability to grow organically and through business development opportunities . . ."[50] Lionbridge also described Union Square's fairness opinion as a "positive reason" supporting its decision to approve the merger.[51]

The proxy statement included a summary of Union Square's fairness opinion. Lionbridge explained Union Square assumed and relied upon the accuracy of information provided to it and relied upon assurances of Lionbridge management "they were not aware of any facts that would make such information inaccurate of misleading."[52] Union Square assumed the financial projections prepared by Lionbridge "were reasonably prepared on a basis reflecting the best currently available estimates and good faith judgments of management as to the future competitive, operating, and regulatory environments and related financial performance of [Lionbridge]."[53]

Following at least two shareholder suits challenging HIG's proposed acquisition, Lionbridge shareholders approved the merger in February 2017 and the merger closed the same day.[54]

Under the merger agreement, HIG created two affiliate entities, LBT Acquisition, Inc. and LBT Merger Sub, Inc.[55] LBT Acquisition is an affiliate company controlled by HIG.[56] LBT Merger Sub is a wholly owned subsidiary of LBT Acquisition.[57] Lionbridge merged into LBT Merger, Sub, Inc.[58] Lionbridge survived the merger with LBT Merger Sub.[59] Lionbridge shareholders received $5.75 per share.

6

After closing, Mr. Cowan told a media outlet Lionbridge would "absolutely" participate actively in mergers and acquisitions.[60]   Three days after the merger closed, Lionbridge announced its acquisition of Exequo, an audio production, translation, and localization company which operated studios in five countries.[61]   A Lionbridge executive stated the acquisition underscored HIG's support of Lionbridge's acquisition growth strategy.[62]

## II.   Analysis

In its first amended complaint, Laborers' Local #231 Pension Fund alleged the projections and assumptions underlying projections in the January 2017 definitive proxy statement were false and misleading because the projections did not account for Lionbridge's potential growth through acquisitions.   Pension Fund alleged the proxy did not disclose the projections did not account for acquisition growth.   In our March 13, 2018 Order and Memorandum, we dismissed Pension Fund's first amended complaint for failing to allege a false or misleading statement in the proxy statement.   Applying our court of appeals teachings in *OFI Asset Mgmt. v. Cooper Tire & Rubber*,[63] we found Pension Fund failed to allege the projections and assumptions were false or misleading because Lionbridge included the projections only to provide shareholders with the same projections it provided to its board, special committee, and Union Square in assessing the fairness of the merger.   We found the only statement made by Lionbridge in incorporating the projections in the proxy statement is the same projections were provided to the other relevant parties.   Pension Fund did not allege Lionbridge provided different projections to its board, special committee, or Union Square.

Upon leave, Pension Fund files a second amended complaint suing HIG, LBT Acquisition, LBT Merger, Lionbridge, and Lionbridge's board of directors and officers alleging the January definitive proxy statement violated the Securities and Exchange Act of 1934 and its implementing regulations.   Pension Fund alleges Lionbridge omitted from the proxy statement

7

the material fact the financial projections did not incorporate Lionbridge's potential growth through its acquisition growth strategy and rendered six statements in the proxy materially false or misleading under Section 14(a) of the '34 Act.[64] Pension Fund claims HIG, its affiliates, and Lionbridge's board and officers are "controlling persons" under Section 20(a) of the '34 Act[65] and are liable for the false and misleading statements. In our March 13 Memorandum, we found three of the six statements not false or misleading under the '34 Act.

HIG, its affiliates, Lionbridge, and Lionbridge's board and officers move to dismiss arguing Pension Fund does not allege a false or misleading statement in the proxy. They argue the proxy explicitly stated the projections did not include future transactions, including acquisitions. They argue the disclaimer accompanying the projections explain the projections are not predictive of future events and are included only to provide the same information provided to other interested parties in assessing the merger. They argue the statements at issue are forward looking statements subject to the safe-harbor provision under the Private Securities Litigation Reform Act.[66] They argue the statements at issue are accompanied by cautionary language and therefore are not actionable under the "bespeaks caution" doctrine. Finally, they argue Pension Fund failed to state a claim against Mr. Litz and HIG and its affiliates because they did not prepare the proxy, did not solicit the shareholders' vote, and are not controlling persons under Section 20(a).

## A. Pension Fund pleads one limited Section 14(a) claim against Lionbridge and its board and officers.

Pension Fund limits its claim to specific disclosures in the proxy statement which allegedly violate federal securities law. Pension Fund does not allege breach of fiduciary duty under Delaware Law. "[T]he fundamental purpose of the Securities Exchange Act is to implement 'a philosophy of full disclosure;' once full and fair disclosure has occurred, the

fairness of the terms of the transaction is beyond the scope of the Act."[67] A breach of fiduciary duty unaccompanied by misrepresentation, nondisclosure, or deception, does not violate the '34 Act.[68] We cannot allow counsel's "artful legal draftsmanship" to backdoor claims "essentially grounded on corporate mismanagement" under federal securities law.[69]

Section 14(a) of the '34 Act prohibits any person "in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered pursuant to section 12."[70] "Section 14(a) seeks to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations."[71] Securities and Exchange Commission Rule 14a-9 provides "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . ."[72] "To be actionable under Rule 14a–9, 'a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.'"[73] The filer of a proxy statement is not obligated to predict the future, unless the filer has reason to believe a future event will occur.[74]

To plead a Section 14(a) violation, Pension Fund must allege "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."[75] An omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding

9

how to vote . . . Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[76]   Scienter is not an element of a Section 14(a) claim.[77]

Our court of appeals instructs us claims sounding in fraud brought under Section 14(a) are subject to the heightened pleading standards found in the Private Securities Litigation Reform Act.[78]   Under the heightened standard, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[79]   The Reform Act is designed to restrict abuses of class action securities litigation.[80]   The Reform Act mandates we dismiss a complaint failing to meet the heightened pleading requirements.[81]

Under the '34 Act and Reform Act, we limit our review to the statements alleged to be false or misleading in Pension Fund's second amended complaint. We express no opinion on any other statement in Lionbridge's January 31 proxy statement. Limiting our analysis to the Pension Fund's challenge, Pension Fund alleges one specific statement is materially false or misleading under Section 14.

### 1. Pension Fund again fails to allege a false or misleading statement based on the projection numbers and assumptions.

Pension Fund claims the projections found in the proxy and the assumptions underlying the projections are false and misleading because the projections did not account for Lionbridge's potential growth through acquisitions. In its first amended complaint, Pension Fund claimed the same projections and assumptions to be false and misleading. We dismissed Pension Fund's

claim based on the projection numbers and assumptions after applying our court of appeals decision in *OFI Asset Mgmt*.

In *OFI Asset Mgmt*., our court of appeals affirmed the dismissal of a complaint based on alleged misleading financial projections included in a proxy statement. The plaintiff in *OFI Asset* alleged the proxy statement contained materially false and misleading financial projections because the projections did not provide accurate estimates of the defendant's future revenue and operating profits.[82]    The shareholder alleged the management team created updated financial projections before filing the proxy statement but only included the older projections.[83]  The court found the financial projections did not stand alone as a statement of affirmative fact, rather the defendant accompanied the projections with "a lengthy and specific disclaimer."[84]

The disclaimer stated, "[The] financial projections set forth below are included in this proxy statement only because this information was provided to the [potential acquirer] . . . in connection with a potential transaction involving [the defendant] . . . *You should not regard the inclusion of these projections in this proxy statement as an indication that* [the defendant], [the potential acquirer], [or other relevant parties] *considered or consider the projections to be necessarily predictive of actual future events, and you should not rely on the projections as such.*"[85]    The disclaimer listed the defendant's financial advisor as having received the projections during the negotiation process, as well.[86]  The financial advisor used the projections to form a fairness opinion regarding the potential merger.[87]  The proxy statement also labelled the projections as "outdated" and explained the defendant did not intend to update the projections.[88]

The court concluded, "[t]he projections are plainly not included as statements of fact. Instead, the only relevant statement of fact is that the projections were, in fact, the projections

11

that [the defendant] provided to [the potential acquirer] and the financing bank during the negotiation of the deal."[89] Because the plaintiff did not allege the projections included in the proxy statement were different from what the defendant provided to the potential acquirer and its financial advisor, the plaintiff did not plead an actionable false or misleading statement under the '34 Act.[90]

In its Second Amended Complaint, Pension Fund again claims the projections and assumptions underlying the projections are false and misleading because the projections did not include Lionbridge's potential growth through acquisitions. Pension Fund does not allege new facts or raise new legal arguments relating to the projections and assumptions.

As in *OFI Asset Mgmt.*, Lionbridge accompanied its financial projections with "a lengthy and specific disclaimer." The disclaimer included in the proxy closely resembles the disclaimer analyzed in *OFI Asset Mgmt.* The disclaimer highlighted the fact Lionbridge included the projections cited by Pension Fund in the proxy statement for the purpose of providing the voting shareholders with information Lionbridge's board, special committee, and financial advisor used to assess the potential merger. Based on the disclaimer accompanying the projections, the only relevant statement of fact a shareholder may draw from the inclusion of the projections is Lionbridge provided the same projections to its special committee of independent directors and to Union Square in assessing the proposed merger with LBT Merger Sub.

Pension Fund cites the fact the estimated growth rate of 3.9% differed from Lionbridge's experienced growth rate of 7% from 2011 through 2015 as evidence the projections did not include acquisition based growth. Even assuming Pension Fund alleged sufficient facts to attribute the reduction in Lionbridge's growth estimates to its failure to include estimated growth

12

through its acquisition strategy, Pension Fund does not allege a false or misleading statement based on the projections.

Pension Fund does not allege how the omission of potential growth through an acquisition strategy is materially misleading or false based on the information reported to Union Square. Pension Fund does not allege Lionbridge's board did not provide the projections to its special committee, or financial advisor. Whether the projection incorporated the acquisition strategy does not negate Lionbridge's representation it provided the same projection to others involved in assessing the merger. The representation in the proxy statement is true. Pension Fund's claim the Defendants should have told Union Square more information may have been or could have been part of the pre-merger Chancery Court litigations, but this "should have disclosed" is not part of the plead Section 14 claim here.

Pension Fund's claim based on the projection assumptions fails for the same reasons. Pension Fund does not identify how the assumptions render the statement of fact the same projections were provided to Lionbridge's board and Union Square is materially false or misleading. Even assuming it is true the assumptions do not reflect Lionbridge's acquisition strategy, it would not negate the representation by Lionbridge it provided the same projections based on the same purported assumptions to its board, special committee and financial advisor. Allowing Pension Fund to backdoor a claim based on the projections by alleging false and misleading assumptions would allow Pension Fund to wholly bypass our court of appeals' decision in *OFI Asset Mgmt*. Based on our liberal reading of Pension Fund's second amended complaint, Lionbridge provided the same allegedly flawed projections to its board, special committee, and financial advisors as it did to its shareholders.[91]

13

Pension Fund now seeks to hold Lionbridge's board and others liable for failing to provide accurate projections. This theory is not viable under our court of appeals' guidance in *OFI Asset Mgmt.* If it did, we would be recognizing a claim challenging the board's adherence to the fiduciary duties of loyalty, candor and care in the context of a 14(a) claim. We decline to transform Section 14(a) focusing on disclosure into a second shot at a fiduciary duty claim for failing to disclose information to the financial advisor. This may be a claim in Chancery Court but we do not see a viable claim plead today under Section 14(a) after *OFI Asset Mgmt.* Pension Fund fails to allege a false or misleading statement under Section 14(a).

## 2. Pension Fund fails to sufficiently allege the board's consideration of Lionbridge's business and financial prospects if it remained an "independent, publicly traded company" is false or misleading.

Pension Fund claims the following statement in the proxy is materially false or misleading because the proxy statement did not disclose the projections did not include potential growth through an acquisition strategy: "During the course of its deliberations, the Special Committee held numerous meetings and consulted with our senior management, Union Square and Goodwin Proctor, and reviewed, evaluated and considered numerous factors and a significant amount of information and data, together with our full Board of Directors, including . . . our business and financial prospects if we were to remain an independent, publicly-traded company and the growth and scale required to effectively compete in the localization and interpretation industries, including forecasts of future financial performance set forth in the [disclosed projections]."[92]

Pension Fund argues this statement makes two representations. First, Lionbridge directors considered the projections in their decision to approve the merger. Second, Lionbridge's board believed the projections represented Lionbridge's *actual* "business and financial prospects if [it] were to remain an independent, publicly-traded company." Pension

Fund argues the second representation is misleading because the disclosed projections did not actually represent Lionbridge's "business and financial prospects" as an "independent, publicly-traded company" because they did not incorporate acquisition based growth.

Pension Fund relies on the Supreme Court's holding in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund.*[93] In *Omnicare*, the Court assessed when an opinion may be false or misleading under Section 11 of the Securities Act of 1933. The Court explained the inclusion of an opinion in a registration statement affirms one fact: the speaker actually holds the stated belief.[94] If the speaker does not in fact hold the stated belief, the opinion is false and misleading, assuming this fact is material.[95] The Court also found a sincere statement of opinion may give rise to liability if the registration statement "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself."[96]

In *Omnicare*, the Supreme Court interpreted and applied the '33 Act. Our court of appeals acknowledges the Court's holding applies to Section 11 of the '33 Act, but has not held whether *Omnicare* applies to claims arising under the '34 Act.[97] HIG, its affiliates, Lionbridge, and Lionbridge's board and officers do not argue *Omnicare* cannot be applied here.

HIG, its affiliates, Lionbridge, and Lionbridge's board and officers argue the challenged statement does not include a representation the projections are a reliable prediction of the future. They argue it simply states Lionbridge's board and special committee considered the projections in their analysis of the merger.

Pension Fund's claim directly contradicts the "lengthy and specific disclaimer" attached to the projections in the proxy statement. The disclaimer stated Lionbridge did not consider the projections to be predictive of Lionbridge's *actual* business prospects. Specifically, the

15

disclaimer stated, "The inclusion of the selected elements of the forecasts in the table and accompanying narrative above should not be regarded as an indication that Lionbridge and/or any of our affiliates, officers, directors, advisors or other representatives consider the forecasts to be predictive of actual future events, and this information should not be relied upon as such." Pension Fund attempts to backdoor a claim based on the projection numbers and bypass *OFI Asset Mgmt*. Lionbridge included the projections to provide its shareholders the same projections the board, special committee, and Union Square used in assessing the merger. Pension Fund fails to allege this challenged statement is false or misleading under Section 14.

### 3. Pension Fund alleges Lionbridge's expressed belief Union Square's fairness opinion is a "positive reason" supporting its decision to approve the merger is materially false or misleading.

Pension Fund claims Union Square's fairness opinion and Lionbridge's board's reliance on the fairness opinion is materially false and misleading because the proxy omitted the fact the projections did not incorporate acquisition based growth. Specifically, Pension Fund challenges the statement Lionbridge's board considered Union Square's fairness opinion to be a "positive reason" to support the merger agreement. Pension Fund also challenges statements found in the summary of Union Square's fairness opinion. Specifically, Pension Fund challenges the statements Union Square "used and relied" upon the projections Lionbridge's management provided in rendering its fairness opinion; Union Square "assumed and relied upon" the accuracy of information provided to it; Union Square assumed the financial forecasts "were reasonably prepared on a basis reflecting the best currently available estimates and good faith judgments of management"; and Union Square "relied on assurances of [Lionbridge's] management that they were not aware of any facts that would make such information inaccurate or misleading" in rendering its fairness opinion.

16

With respect to the statements summarizing Union Square's assumptions, Pension Fund does not allege the statements are false or misleading. The assumptions are not opinions and *Omnicare* does not apply. Pension Fund does not allege Union Square did not make these assumptions and did not rely on the financial projections provided to it in making its fairness opinion. Regarding the statement Union Square relied on assurances from Lionbridge's management they did not know any facts making the information Union Square relied on misleading, Pension Fund does not allege Union Square did not rely on an assurance. Pension Fund argues the assurance rendered the financial projections in the proxy materially false and misleading because the projections did not incorporate acquisition based growth. But Pension Fund seeks to impose liability based on an alleged misrepresentation Lionbridge made to Union Square months before issuing the proxy statement. Claims of management lying to its financial advisor by making false assurances to induce the advisor to render a favorable fairness opinion may sound in breach of fiduciary duty, but they do not form the basis of a Section 14 claim. The proxy statement explained Union Square relied on Lionbridge's assurance in rendering its fairness opinion. Pension Fund does not allege Union Square did not actually rely on the assurance or Lionbridge did not make the assurance. The statement in the proxy is not false or misleading.

Lionbridge's statement identifying Union Square's fairness opinion as a "positive reason" supporting its completed decision to approve the merger presents a closer issue. The statement at issue is a statement of opinion and not a projection of future performance.[98]

Citing *Omnicare*, Pension Fund argues the board's belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger is materially misleading because the board knew the fairness opinion relied in-part on projections the board provided

17

Union Square which did not account for acquisition based growth and the board did not disclose this fact.

While a close call, at this preliminary stage we find Lionbridge's belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger may be an actionable statement under Section 14. Reading Lionbridge's opinion, a reasonable investor could take from the statement Lionbridge placed confidence in Union Square's analysis and opinion. A reasonable investor could take Lionbridge believed Union Square accurately analyzed Lionbridge's potential financial growth and concluded $5.75 to be fair consideration for a Lionbridge share. These facts a reasonable investor could have taken from the statement of opinion conflict with undisclosed facts or knowledge held by the board concerning the accuracy or potential flaws in Union Square's analysis.[99]

Lionbridge argues the proxy statement disclosed the projections did not incorporate potential growth through acquisitions. Lionbridge cites language in the proxy statement: "the forecasts do not take into account any circumstances, transactions, or events occurring after the dates on which the forecasts were prepared." But the proxy also states, "The forecasts reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on actual results, revised prospects for our business, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared." Based on the latter representation, Lionbridge incorporated "anticipated" transactions into the forecasts which an investor may read to mean Lionbridge incorporated into the forecasts acquisitions it anticipated making at the time it created the forecasts.

18

Defendants also argue this claim is barred by the "bespeaks caution" doctrine as it is an opinion presented among a variety of cautionary warnings. Defendants argue the Reform Act's safe harbor for forward-looking statements and the bespeaks caution doctrine immunize them from potential liability under the '34 Act. The Reform Act's safe harbor provision applies to forward-looking statements. 15 U.S.C. § 78u-5(c)(1). A forward looking statement includes (1) a statement containing a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial items; (2) a statement of the plans and objectives of management for future operations; (3) a statement of future economic performance; (4) any statement of the assumptions underlying or relating to any statement previously listed; (5) any report issued by an outside reviewer retained by an issuer regarding a forward-looking statement made by the issuer; (6) a statement containing a projection or estimate on other topics specified by rule or regulation by the Securities and Exchange Commission. *Id.* § 78u-5(i)(1)(A)-(F).

This opinion is not a forward-looking statement under the Reform Act and is not subject to the safe harbor provision. Under the bespeaks caution doctrine, "when an offering document's forecasts, opinions, or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis of a securities fraud claim if those statements did not affect the 'total mix' of information the documented provided to investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law." [100] "Cautionary language must be extensive, specific, and directly related to the alleged misrepresentation."[101]

The bespeaks caution doctrine may apply to statements of opinion, but Defendants do not identify meaningful, extensive, and specific cautionary statements in the proxy directly related to the alleged misrepresentation. Defendants cite to the disclaimer accompanying the financial

projections explaining the forecasts do not take into account "circumstances, transactions or events occurring after the dates on which the forecasts were prepared"; warning actual results will differ and may differ materially from the forecasts; explaining the forecasts should not be regarded as an indication Lionbridge, the board, and officers "consider the forecasts to be predictive of actual future events" and shareholders should not rely on the forecasts as such; and concluding "Lionbridge stockholders are cautioned not to place undue, if any, reliance on the forecasts."

These cited disclaimers directly relate to the board's belief Union Square's fairness opinion is a "positive reason" supporting its decision to approve the merger. Disclaimers cautioning shareholders the projections numbers may differ materially from actual results and should not be relied upon as being predictive of actual results are not equivalent to cautioning shareholders of the board's expressed reliance on Union Square's fairness opinion. The disclaimers do not caution shareholders to the board's confidence in Union Square's fairness opinion and do not provide reasons why shareholders should not place undue value in the statement Union Square's fairness opinion is a "positive reason" supporting the board's decision to approve the merger.

Based on a liberal reading of Pension Fund's second amended complaint, Lionbridge did not incorporate acquisition based growth into its projections it provided to Union Square. Lionbridge also did not disclose to its shareholders it omitted acquisition based growth in its financial projections. This omission conflicts with the information a reasonable investor could have taken from the representation in the proxy.[102] The board allegedly knew its projections and Union Square's fairness opinion did not account for acquisition based growth but simultaneously expressed confidence in the same opinion to its shareholders. Pension Fund states a claim under

20

Section 14 based on the board's expressed belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger.

### 4. Pension Fund fails to allege the board's belief $5.75 provided shareholders with greater certainty of value over their share's potential trade price is materially false or misleading.

Pension fund claims the board's belief $5.75 "provides greater certainty of value and less risk to [] stockholders relative to the potential trading price of the shares over the long-term after accounting for the risks to our business resulting from operational execution risk and evolving industry dynamics, including our ability to grow organically and through business development opportunities" as a "positive reason" supporting the merger is materially false and misleading. Pension Fund claims the statement implies the projections and Union Square's fairness opinion reflected Lionbridge's ability to grow "through business development opportunities." But Pension Fund claims the projections did not account for acquisition based growth.

The statement is limited to Lionbridge's board's subjective belief $5.75 provides shareholders greater certainty in value versus the shares' long-term potential sale price. Pension Fund does not allege the board did not actually hold this belief. Lionbridge's board knew about its acquisition growth strategy and Pension Fund does not allege the board failed to consider its acquisition strategy in making its valuation analysis. In expressing its opinion, the board does not cite to or rely upon Union Square, its fairness opinion, or the allegedly flawed projection numbers. When the statement is read in context with the remaining bulleted points in the section listing "positive reasons" the board believed supported its approval of the merger, it becomes apparent this challenged statement relates only to the board's subjective belief. The board listed Union Square's fairness opinion finding $5.75 per share to be fair consideration and Union Square's financial analyses presented to the board separately to be a positive reason to support its decision to approve the merger.

The board, with knowledge of Lionbridge's acquisition growth strategy, expressed its subjective belief $5.75 provided shareholders greater certainty and Pension Fund does not allege the board did not hold this belief or the board did not account for Lionbridge's acquisition strategy when making its own valuation analysis. Pension Fund fails to allege a false or misleading statement under Section 14 based on the board's subjective belief $5.75 provides its shareholders greater certainty in value.

### 5. Pension Fund fails to plead a Section 14(a) claim against HIG, LBT Acquisition, and LBT Merger Sub but pleads a claim against Mr. Litz.

Section 14(a) applies to any person who solicits or permits the use of his name to solicit a proxy in violation of securities regulations.[103] Mr. Litz, HIG, LBT Acquisition, and LBT Merger Sub argue they did not solicit and did not permit Lionbridge to use their names to solicit the shareholders' votes. Pension Fund does not respond as to whether HIG, LBT Acquisition, and LBT Merger Sub are liable under Section 14(a).

As to Mr. Litz, Pension Fund alleges he, as Lionbridge's Senior VP and CFO, provided material information included in the proxy, worked with Mr. Cowan to prepare the financial projections disclosed in the proxy, and made public statements before issuing the proxy confirming Lionbridge's acquisition strategy. The proxy statement explains the "proxy solicitation is being made and paid for by Lionbridge on behalf of our Board of Directors."[104] The proxy card attached to the proxy statement also states, "The undersigned hereby acknowledges receipt of the Notice of the Special Meeting of Stockholders and Proxy Statement, and hereby revokes all prior proxies and appoints Rory J. Cowan, Marc E. Litz and Margaret A. Shukur as proxies, and each or any of them as Proxy Holders with full power of substitution and power to act alone, to vote all shares of Common Stock which the undersigned would be entitled to vote at the Special Meeting of Stockholders . . ."[105] Pension Fund sufficiently alleges Mr.

22

Litz as an executive of Lionbridge and as a proxy holder solicited the proxy. Mr. Litz may be held liable under Section 14(a).

Pension Fund does not allege HIG, LBT Acquisition, and LBT Merger Sub solicited or permitted Lionbridge to use their name to solicit Lionbridge shareholders' proxy. Pension Fund fails to allege a Section 14(a) claim against HIG, LBT Acquisition, and LBT Merger Sub.

### B. Pension Fund pleads a Section 20(a) claim against Mr. Litz, HIG, LBT Acquisition, and LBT Merger Sub.

Pension Fund claims Lionbridge's board members and officers, HIG, LBT Acquisition, and LBT Merger Sub are liable for the alleged false and misleading statements and omissions as "controlling persons" under Section 20(a) of the '34 Act. Mr. Litz, HIG, LBT Acquisition, and LBT Merger Sub argue Pension Fund failed to allege sufficient facts they are controlling persons under Section 20(a).

Section 20(a) of the '34 Act imposes liability on every person who controls any person liable under any provision of the '34 Act.[106] To plead control person liability, Pension Fund must allege "(1) a primary violation of federal securities law by a controlled person; [and] (2) control of the primary violator by the defendant."[107] Allegations supporting a reasonable inference HIG, LBT Acquisition, LBT Merger Sub, and Mr. Litz had the potential to influence and direct the activities of Lionbridge and its board and officers are sufficient to allege control.[108] There is disagreement among district courts in our Circuit whether Pension Fund must also allege HIG, LBT Acquisition, LBT Merger Sub, and Mr. Litz were in some meaningful sense culpable participants in the Section 14(a) violation.[109] In *Dutton v. Harris Stratex Networks*, the Honorable Joseph J. Farnan, Jr. found the general trend in our Circuit to be a plaintiff did not have to plead culpable participation because "the facts relevant to culpable participation are usually within the control of the defendant, and thus, discovery is warranted on the issue."[110]

Lionbridge pleads one Section 14(a) claim, a primary violation, against Lionbridge and its board and officers. Lionbridge sufficiently alleges control of Lionbridge and its board and officers by Mr. Litz. Mr. Litz provided material information to Lionbridge's board and officers included in the proxy statement, including the financial projections in the proxy.[111] The board relied on this information to approve the merger and to recommend the merger to Lionbridge shareholders. Pension Fund alleged sufficient facts to support an inference Mr. Litz had the potential to influence the board's decision to approve and recommend the merger to its shareholders.

Lionbridge sufficiently alleges control of Lionbridge and its board and directors by HIG and its affiliate companies. Under the merger agreement, LBT Acquisition and LBT Merger Sub, entities created by HIG, were obligated to cooperate in preparing and filing the proxy statement and to provide Lionbridge certain information.[112] LBT Acquisition also had the opportunity to review and comment on the proxy statement before Lionbridge issued it to its shareholders.[113] Pleading opportunities to provide information, to review the proxy, and to comment on the substance of the proxy, Pension Fund alleges sufficient facts to support the inference HIG, LBT Acquisition, and LBT Merger Sub at least had the potential to influence Lionbridge's board in approving and recommending the merger to its shareholders.

## III. Conclusion

In the accompanying Order, we grant in part and deny in part the Defendants' motion to dismiss. Pension Fund pleads a Section 14(a) claim against Lionbridge and its board and officers based on the statement the board viewed Union Square's fairness opinion as a "positive reason" supporting its decision to approve the proposed merger. We dismiss Pension Fund's Section 14(a) claim based on all other alleged false or misleading statements or omissions. Pension Fund

pleads a Section 20(a) claim against Lionbridge's board and officers, HIG, LBT Acquisition, and

LBT Merger Sub.

---

[1] ECF Doc. No. 34 at ¶ 14.

[2] *Id.* ¶ 56.

[3] *Id.* ¶ 56.

[4] *Id.* ¶ 57.

[5] *Id.* ¶ 57.

[6] *Id.* ¶ 58.

[7] *Id.* ¶ 58.

[8] *Id.* ¶ 58.

[9] *Id.* ¶ 59.

[10] *Id.* ¶ 60.

[11] *Id.* ¶ 60.

[12] *Id.* ¶ 60.

[13] *Id.* ¶ 60.

[14] *Id.* ¶ 60.

[15] *Id.* ¶ 60.

[16] *Id.* ¶ 60.

[17] *Id.* ¶ 60.

[18] *Id.* ¶ 60.

[19] *Id.* ¶ 40.

[20] *Id.* ¶ 41.

[21] *Id.* ¶ 41.

[22] *Id.* ¶ 42.

[23] *Id.* ¶ 44.

[24] *Id.* ¶ 44.

[25] *Id.* ¶ 44.

[26] *Id.* ¶ 46.

[27] *Id.* ¶ 46.

[28] *Id.* ¶ 46.

[29] *Id.* ¶¶ 61-62.

[30] *Id.* ¶ 46.

[31] *Id.* ¶ 54.

[32] *Id.* ¶ 70.

[33] *Id.* ¶ 70.

[34] *Id.* ¶ 70.

[35] *Id.* ¶ 69.

[36] *Id.* ¶ 69.

[37] *Id.* ¶ 70.

[38] *Id.* ¶ 71.

[39] *Id.* ¶ 72.

[40] *Id.* ¶ 72.

[41] *Id.* ¶ 72.

[42] *Id.* ¶ 83.

[43] *Id.* ¶ 84.

[44] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 53 (Jan. 31, 2017) (ECF Doc. No. 17-1). Pension Fund did not attach the proxy statement at issue to its second amended complaint. But we may take judicial notice of the January 31, 2017 proxy statement filed publicly with the Securities and Exchange Commission. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

[45] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 54 (Jan. 31, 2017). (ECF Doc. No. 17-1).

[46] *Id.*

[47] *Id.* The proxy statement also included a section titled "Special Note Regarding Forward-Looking Statements." *Id.* at iii. The special note listed potential factors which may influence Lionbridge's future financial results. *Id.* The note stated, "You should not rely on forward-looking statements because they involve known or unknown risks, uncertainties, and other facts, some of which are beyond our control. These risks, uncertainties, and other factors may cause our actual results, performance or achievements to be materially different from any future results, levels of activity, performance or achievements expressed or implied by the forward looking statements. . . . These forward-looking statements speak only as of the date on which the statements were made and are not guarantees of future results, levels of activity, performance or achievements. Except as may be required by applicable law, we do not intend to update and assume no obligation to update any forward-looking statements. All forward looking statements in this document and in documents incorporated by reference herein are qualified by this cautionary statement." *Id.*

[48] *Id.* ¶ 77.

[49] *Id.* ¶ 77.

[50] *Id.* ¶ 81.

[51] *Id.* ¶ 79.

[52] *Id.* ¶ 79.

[53] *Id.* ¶ 79.

[54] In evaluating a motion to dismiss, we may consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

The public record confirms we are reviewing the third Lionbridge shareholder challenge to the HIG merger. Lionbridge shareholders, including Pension Fund, sued to enjoin or alter this merger in the Chancery Court challenging the directors' disclosures made in the proxy statement twice before the merger. On January 13, 2017, a Lionbridge shareholder filed a class action hoping to enjoin the HIG merger claiming a preliminary January 5, 2017 proxy statement

omitted material information including regarding "Lionbridge's financial projections and the analyses performed by Lionbridge's financial advisor... Union Square in support of its so-called fairness opinion." Verified Class Action Compl., ¶ 52, *Paul Parshall v. Lionbridge Techs., Inc., et al.*, No. 2017-0022 (Jan. 13, 2017).

On February 28, 2017, Pension Fund sued Lionbridge in the Court of Chancery. Verified Compl. to Compel Books and Records under 8 Del. C. § 220, *Laborers' Local #231 Pension Fund v. Lionbridge Techs., Inc.*, No. 2017-151 (Feb. 28, 2017). Pension Fund sought books and records alleging HIG's offer of $5.75 per share described in the proxy statement undervalued Lionbridge and "the opportunity to participate in Lionbridge's expected long-term growth will be taken away from them and handed to HIG for what is clearly an unfair price." *Id.* ¶ 28.

[55] ECF Doc. No. 34 at ¶ 27-28.

[56] *Id.* ¶ 27.

[57] *Id.* ¶ 28.

[58] *Id.* ¶ 28.

[59] *Id.* ¶ 28.

[60] *Id.* ¶ 64.

[61] *Id.* ¶ 66.

[62] *Id.* ¶ 66.

[63] 834 F.3d 481 (3d Cir. 2016).

[64] 15 U.S.C. § 78n(a).

[65] 15 U.S.C. § 78t(a).

[66] 15 U.S.C. § 78u-4(b)(1).

[67] *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 638 (3d Cir. 1989) (citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477-78 (1977)).

[68] *Id.*

[69] *Id.*

[70] 15 U.S.C. § 78n(a)(1).

[71] *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) (citing *Shaev v. Saper*, 320 F.3d 373, 379 (3d Cir. 2003)).

[72] 17 C.F.R. § 240.14a-9.

[73] *Tracinda Corp. v. Daimler Chrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir.2002)).

[74] *In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1330 (citation omitted).

[75] *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (citing *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992)).

[76] *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (footnote omitted); *Shaev v. Saper*, 420 F.3d 373, 379 (3d Cir. 2003).

[77] *Cal. Pub. Emps. Ret. Sys.*, 394 F.3d at 143.

[78] *Id.* at 144; 15 U.S.C. § 78u-4(b)(1). Although Section 14(a) claims only require a showing of negligence, Pension Fund's second amended complaint sounds in fraud. Pension Fund alleges HIG, its affiliates, and Lionbridge's board and executives knowingly provided false and misleading statements to its shareholders. ECF Doc. No. 34 at ¶¶ 67, 80, 95. Pension Fund alleges Lionbridge offered these false statements to allow its financial advisor to approve HIG's offered per share purchase price and in an effort to induce shareholders to vote in favor of the merger. *Id.* ¶¶ 88, 95. Pension Fund alleges Lionbridge's management team induced its shareholders' favorable vote because HIG offered the management team continued employment and allowed Mr. Cowan to rollover a portion of his Lionbridge stock into the surviving company's stock. *Id.* ¶¶ 48, 53.

[79] 15 U.S.C. § 78u-4(b)(1).

[80] *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (citation omitted).

[81] 15 U.S.C. § 78u-4(b)(3)(A).

[82] *Id.* at 500.

[83] *Id.* at 500-01.

[84] *Id.* at 501.

[85] *Id.*

[86] *Id.* at 488; *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, No. 14-68, 2015 WL 4036179, at *6 (D. Del. Jul. 1, 2015).

[87] *OFI Asset Mgmt.*, 834 F.3d at 488.

[88] *Id.* at 501.

[89] *Id.*

[90] *Id.* Although the court conducted its analysis under Section 10(b) of the '34 Act, the court also found the plaintiff failed to allege a material misrepresentation under Section 14(a) for the same reasons articulated in its Section 10 analysis. *Id.* at 505.

[91] Allegations of directors and executives providing false information to its financial advisors to receive a favorable fairness opinion to in turn induce its shareholders' favorable vote may sound in breach of fiduciary duty. Pension Fund does not plead a breach of fiduciary duty claim here. We express no opinion on the merits or possibility of a fiduciary duty claim.

[92] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 39-40 (Jan. 31, 2017). (ECF Doc. No. 17-1).

[93] 135 S. Ct. 1318, __ U.S. __ (2015).

[94] *Id.* at 1326.

[95] *Id.* at 1327.

[96] *Id.* at 1329.

[97] *OFI Asset Mgmt.*, 834 F.3d at 493 n. 11; *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 132 n. 12 (3d Cir. May 23, 2017).

[98] Defendants argue the Reform Act's safe harbor for forward-looking statements and the bespeaks caution doctrine immunize them from potential liability under the '34 Act.

The Reform Act's safe harbor provision applies to forward-looking statements. 15 U.S.C. § 78u-5(c)(1). A forward looking statement includes (1) a statement containing a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial items; (2) a statement of the plans and objectives of management for future operations; (3) a statement of future economic performance; (4) any statement of the assumptions underlying or relating to any statement previously listed; (5) any report issued by an outside reviewer retained by an issuer regarding a forward-looking statement made by the issuer; (6) a statement containing a projection or estimate on other topics specified by rule or regulation by the Securities and Exchange Commission. *Id.* § 78u-5(i)(1)(A)-(F).

The statement at issue is not a forward-looking statement under the Reform Act and is not subject to the safe harbor provision.

Under the bespeaks caution doctrine, "when an offering document's forecasts, opinions, or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis of a securities fraud claim if those statements did not affect the 'total mix' of information the documented provided to investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law." *In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993); *see also EP Medsystems, Inc. v. Echocath*, 235 F.3d 865, 874 (3d Cir. 2000) (explaining bespeaks caution doctrine only applies to forward-looking statements). "Cautionary language must be extensive, specific, and directly related to the alleged misrepresentation." *In re Aetna Sec. Litig.*, 617 F.3d 272, 282 (3d Cir. 2010) (citation omitted).

The bespeaks caution doctrine may apply to statements of opinion, but Defendants do not identify meaningful, extensive, and specific cautionary statements in the proxy directly related to the alleged misrepresentation. Defendants cite to the disclaimer accompanying the financial projections explaining the forecasts do not take into account "circumstances, transactions or events occurring after the dates on which the forecasts were prepared"; warning actual results will differ and may differ materially from the forecasts; explaining the forecasts should not be regarded as an indication Lionbridge, the board, and officers "consider the forecasts to be predictive of actual future events" and shareholders should not rely on the forecasts as such; and concluding "Lionbridge stockholders are cautioned not to place undue, if any, reliance on the forecasts."

None of the cited disclaimers directly relate to the board's belief Union Square's fairness opinion is a "positive reason" supporting its decision to approve the merger. Disclaimers cautioning shareholders the projections numbers may differ materially from actual results and should not be relied upon as being predictive of actual results are not equivalent to cautioning shareholders of the board's expressed reliance on Union Square's fairness opinion. The disclaimers do not caution shareholders to the board's confidence in Union Square's fairness opinion and do not provide reasons why shareholders should not place undue value in the statement Union Square's fairness opinion is a "positive reason" supporting the board's decision to approve the merger.

[99] *See Omnicare*, 135 S. Ct. at 1329.

[100] *In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993); *see also EP Medsystems, Inc. v. Echocath*, 235 F.3d 865, 874 (3d Cir. 2000) (explaining bespeaks caution doctrine only applies to forward-looking statements).

[101] *In re Aetna Sec. Litig.*, 617 F.3d 272, 282 (3d Cir. 2010) (citation omitted).

[102] *Id.*

[103] 15 U.S.C. § 78n(a)(1).

[104] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at 21 (Jan. 31, 2017). (ECF Doc. No. 17-1).

[105] *Id.* (ECF Doc. No. 17-1 at p. 187-88).

[106] 15 U.S.C. § 78t(a).

[107] *Tracinda Corp. v. DiamlerChrysler AG*, 197 F. Supp. 2d 42, 55 (D. Del. Mar. 22, 2002) (citation omitted).

[108] *Id.* (citation omitted).

[109] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 n.20 (3d Cir. 2013) (identifying district court disagreement but not resolving disagreement); *Dutton v. Harris Stratex Networks*, 270 F.R.D. 171, 181 (D. Del. Jul. 22, 2010) (identifying disagreement and concluding general trend is plaintiff does not have to plead culpable participation).

[110] *Dutton*, 270 F.R.D. at 181-82 (citation omitted).

[111] ECF Doc. No. 34 at ¶ 24.

[112] Lionbridge Techs., Inc., Proxy Statement (Schedule 14A) at A-43 (Jan. 31, 2017). (ECF Doc. No. 17-1).

[113] *Id.*