# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LABORERS' LOCAL #231 PENSION FUND** | : CIVIL ACTION |
| v. | : |
| **RORY J. COWAN,** *et al* | : NO. 17-478 |

# ORDER-MEMORANDUM

**AND NOW**, this 18th day of July 2018, upon considering Defendants' Motion for reargument (ECF Doc. No. 49) of our July 2, 2018 Order (ECF Doc. No. 43) and finding most of the present arguments are duplicative from briefing on the motion to dismiss and Defendants otherwise do not show an intervening change in law, new evidence, or the need to correct a clear error of law or fact to prevent a manifest injustice, it is **ORDERED** Defendants' Motion for reargument (ECF Doc. No. 49) is **DENIED**.

## *Analysis*

Lionbridge Technologies, Inc.'s board issued a definitive proxy statement to its shareholders unanimously recommending they approve a going-private merger with HIG Capital, LLC. The merger agreement provided shareholders $5.75 in consideration for each of Lionbridge share. In anticipation of issuing the proxy statement, Lionbridge's management team prepared financial projections for the next two years. The management team, including Chairman, CEO, and President Rory J. Cowan and CFO Marc Litz, provided these projections to financial advisor Union Square Advisors LLC. Union Square relied on, among other things, these financial projections to prepare extrapolated financial projections and to render the opinion

$5.75 to be fair consideration for a Lionbridge share. In the years leading up to Lionbridge's merger with HIG, Lionbridge publicly pursued an acquisition growth strategy. Despite publicly pursuing an acquisition growth strategy, Lionbridge did not incorporate its potential growth through acquisitions in the financial projections provided to Union Square.

The proxy statement included management's two year projections, Union Square's extrapolated projections, and Union Square's fairness opinion. Lionbridge's board included a series of disclaimers in the proxy statement. Lionbridge's board disclaimed (1) the projections are not predictive of Lionbridge's actual future performance; (2) "The forecasts reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on . . . any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared."; and (3) "In addition, the forecasts do not take into account any circumstances, transactions or events occurring after the dates on which the forecasts were prepared." Lionbridge's board failed to disclaim the projections did not incorporate acquisition based growth.

Three days after closing the merger, Lionbridge announced its acquisition of the studio Exequo.[1] Lionbridge did not mention Exequo or the potential acquisition of Exequo in the proxy statement.[2] Pension Fund identified a smaller studio than Exequo had a market capitalization of $400 million on the London Stock Exchange.[3] Lionbridge also alleged the acquisition of a company the size of Exequo takes several months and as a result, Lionbridge's board knew of

---

[1] ECF Doc. No. 34 at ¶ 66.

[2] *Id.*

[3] *Id.*

the planned acquisition before issuing the definitive proxy statement but failed to disclose it in the proxy statement.[4]

After two shareholder challenges to the merger and disclosures in the proxy statement and after the shareholders approved the merger, shareholder Laborers' Local #231 Pension Fund sued Lionbridge, its board, HIG Capital, and HIG's affiliate companies created to complete the merger under Section 14 and Section 20 of the Securities and Exchange Act of 1934. Pension Fund challenged six representations in the proxy statement. Pension Fund alleged the six representations are false or misleading because the board failed to disclose in the proxy statement the projections did not account for acquisition based growth. We found one of the six representations to be actionable under Section 14.

The representation surviving dismissal explained at the time Lionbridge's board approved the merger with HIG, the board believed Union Square's fairness opinion to be a "positive reason" supporting its decision to approve the merger. We found Pension Fund plead a Section 14 claim because it alleged Lionbridge's board knew the fact the projections did not account for acquisition based growth, but based on the "positive reason" statement, a shareholder could conclude Lionbridge placed confidence in Union Square' fairness opinion and Lionbridge believed Union Square accurately analyzed its potential for future growth.[5]

Defendants raise four grounds for reconsideration. A motion for reconsideration may only be granted where the moving party shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [ruled]; or (3) the

---

[4] *Id.* ¶ 67.

[5] ECF Doc. No. 42 at p. 18.

3

need to correct a clear error of law or fact or to prevent manifest injustice."[6] "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."[7]

A.

Lionbridge, its board, HIG, and HIG's affiliates disagree with our factual findings and argue the proxy statement disclosed the projections excluded future transactions. They raised the same argument in their motion to dismiss. They acknowledge the disclaimer accompanying the projections explains the forecasts reflect assumptions subject to change and susceptible to multiple interpretations based on, among other things, transactions or events not anticipated when the forecasts were prepared. Based on this statement, we found a reasonable shareholder could conclude the projections included future transactions, including acquisitions, Lionbridge anticipated at the time its management created the projections. Defendants again cite to the immediately following sentence explaining the forecasts do not take into account any circumstances, transactions or events occurring after the date Lionbridge prepared the projections. Defendants argues the first sentence read in context with the second only allows for the interpretation the projections excluded all future transactions, even if anticipated at the time management created the projections.

The second statement does not change the first statement. The first statement explains the projections reflect assumptions which may be subject to change based on, among other things, transactions or events not anticipated at the time Lionbridge created the projections. The

---

[6] *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

[7] *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995); *see also* Dist. Del. Local Rule 7.1.5.

4

second statement warns shareholders the projections do not account for events taking place after Lionbridge created the projections. Meaning the projections are only as current as the date Lionbridge created them. The statements are not inconsistent. Disclaiming the projections do not take into account future transactions which *actually* occur is not the same as disclaiming the projections do not incorporate *anticipated* transactions. Lionbridge could not include *actual* future transactions at the time it created the projections because Lionbridge cannot predict the future. Lionbridge could only account for *anticipated* transactions and told shareholders it did so. The proxy statement did not disclose the projections excluded anticipated transactions.

**B.**

Lionbridge, its board, HIG, and HIG's affiliates argue Pension Fund failed to allege they excluded material anticipated acquisitions from the projections. They argue Pension Fund therefore did not allege the omission of acquisition based growth from the projections is material. They raised the same argument in their motion to dismiss.

Pension Fund alleged Lionbridge announced the acquisition of the studio Exequo just three days after shareholders approved the merger and the merger closed. Pension Fund alleged Lionbridge did not disclose the Exequo merger in the proxy statement. Pension Fund identified a smaller studio than Exequo had a market capitalization of $400 million. Lionbridge alleged an acquisition of this size takes several months and therefore, Lionbridge's board knew of the planned acquisition before issuing the definitive proxy statement but failed to disclose it in the proxy statement. Questions of materiality "have traditionally been viewed as particularly appropriate for the trier of fact," unless the alleged omissions or misstatements "are obviously so

5

unimportant" to allow us to find them immaterial as a matter of law at the motion to dismiss stage.[8]

Pension Fund alleges materiality. Pension Fund alleged the proxy omitted the fact the projections did not account for acquisition based growth. Pension Fund alleged Lionbridge failed to disclose the Exequo acquisition which closed just days after finalizing the merger. Although Pension Fund does not allege the exact value of the Exequo transaction, it alleges facts suggesting the transaction could be valued in the hundreds of millions of dollars' range. At this preliminary stage, we cannot find omission of acquisition based growth from the projections to be "obviously so unimportant" and immaterial as a matter of law.

C.

Third, Lionbridge, its board, HIG, and HIG's affiliates argue the representation the board believed Union Square's fairness opinion to be a "positive reason" supporting its decision to approve the merger is a statement of fact, not opinion, and Pension Fund does not allege the board did not actually believe the fairness opinion to be "positive reason" supporting the merger. They raised the same argument in their motion to dismiss.

Under SEC Rule 14a-9, it is unlawful to omit a material fact in a proxy statement which makes a statement in the proxy false or misleading.[9] The statement at issue is a statement of opinion. Even if we assumed the statement at issue is a statement of fact, Pension Fund alleged an omission of fact which rendered the statement false or misleading. Pension Fund alleged the projections provided by Lionbridge to Union Square did not incorporate anticipated growth through its acquisition strategy. Lionbridge provided Union Square and Union Square relied on

---

[8] *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 872 (3d. Cir. 2000) (citation omitted).

[9] 17 C.F.R. § 240.14a-9.

6

the projections created by Lionbridge in rendering its fairness opinion. Pension Fund alleged sufficient facts Lionbridge's board knew the projections provided to Union Square did not incorporate potential growth through its acquisition growth strategy and therefore did not believe Union Square's fairness opinion is a positive reason supporting the merger.

The Defendants argue even if the statement is an opinion and can be assessed under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,[10] Pension Fund does not allege the opinion did not fairly align with information the board had at the time it rendered the opinion. They argue Pension Fund alleged and the proxy statement explained it is Lionbridge's *management team*, not the board, which created the projections provided to Union Square. They argue Pension Fund does not allege the opinion does not fairly align with information held by the *board*.

Defendants ignore Pension Fund's allegation Mr. Cowan acted as Lionbridge's chairman of the board, president, and CEO during the time Lionbridge negotiated with HIG, worked with Union Square in obtaining a fairness opinion, and solicited Lionbridge shareholders' vote to approve the merger.[11] Mr. Cowan is part of Lionbridge's management team and board. Pension Fund also alleges Mr. Cowan worked directly with Lionbridge CFO Mr. Litz in preparing the financial projections included in the proxy statement.[12] At this preliminary stage, Pension Fund sufficiently alleged Lionbridge's board, not just its management team, held information which did not align with information a reasonable investor could have taken from the statement of opinion Union Square's financial analysis is a "positive reason" supporting the board's decision

---

[10] -- U.S. --, 135 S. Ct. 1318 (2015).

[11] ECF Doc. No. 34 at ¶ 15.

[12] *Id.* ¶ 24.

7

to approve the merger. At this preliminary stage, Pension Fund sufficiently pleads a material omission which rendered the opinion statement the board believed Union Square's fairness opinion, which relied on Lionbridge's projections, to be a positive reason supporting its decision to approve the merger false or misleading.

**D.**

Fourth, Lionbridge, its board, HIG, and HIG's affiliates cite our July 2, 2018 Memorandum[13] explaining a reasonable investor could take from the "positive reason" statement the board believed Union Square accurately analyzed Lionbridge's potential for future growth. They argue this statement is inconsistent with our holding Pension Fund did not allege the projection numbers to be false or misleading based on the disclaimer language the projections are not predictive of actual results. They argue an investor's belief Union Square accurately analyzed potential future growth is synonymous with saying investors could have believed Union Square's fairness opinion and financial projections to be predictive of actual results.

Defendants are wrong in their characterization of our explanation of what information a reasonable investor could take from the "positive reason" statement. We found a reasonable investor could take *Lionbridge's board* believed Union Square accurately analyzed its potential for future growth and *Lionbridge's board* placed confidence in Union Square's analysis.[14] We did not find a reasonable investor could believe Union Square accurately analyzed Lionbridge's potential growth based on the "positive reason" statement.

Stating a shareholder could take the board believed Union Square analyzed Lionbridge's potential for future growth with accuracy based on all material information, including potential

---

[13] ECF Doc. No. 42.

[14] *Id.* at p. 18.

8

growth through acquisitions, is not the same as stating the board believed Union Square's analysis to be predictive of future results. In the first statement, the investor believes the board provided Union Square with all material information to allow Union Square provide the most accurate fairness opinion based on information available at the time. Pension Fund alleged the board omitted material information – potential growth through acquisitions – in its projections provided to Union Square and as published in the proxy statement. The disclaimer the projection numbers are not predictive of actual results does not address the belief a reasonable investor could take the board placed confidence in Union Square's analysis and opinion. A financial advisor can provide an accurate fairness opinion and financial projections based upon all material input data provided by a company's board, yet the fairness opinion and financial projections may not actually be predictive of actual results.

Defendants argue we are opening floodgates for potential liability on "the most standard of standard proxy statement language." They argue our holding would make the "positive reason" statement actionable whenever a shareholder alleges the financial advisor's fairness opinion is flawed in any way. This is not what we held. The "positive reason" statement is actionable here specifically because Pension Fund alleged the board had material information which it did not disclose to its shareholders and which may be contradictory to what a reasonable investor could believe based on the opinion statement. We appreciate the board disclaimed the projections are not predictive of actual results, but Pension Fund alleged the board did not

disclaim its failure to include acquisition based growth in the projections which would allow the jury to find the statement the board believed Union Square's fairness opinion to be a "positive reason" supporting its decision to approve the merger materially false or misleading.

KEARNEY, J.