IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LABORERS' LOCAL #231 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RORY J. COWAN, et al.,<br><br>Defendants. | Civil Action No. 17-478-CFC |

David Sborz, Peter Andrews, Craig Springer, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Christopher Lyons, ROBBINS GELLER RUDMAN & DOWD LLP, Nashville, Tennessee

*Counsel for Plaintiff*

David Teklits, Thomas Will, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Deborah Birnbach, Ezekiel Hill, Jennifer Luz, Tucker DeVoe, GOODWIN PROCTER LLP, Boston, Massachusetts

*Counsel for Defendants Rory Cowan, Edward Blechschmidt, Michael Dallas, Guy Chazal, Susan Kantor, Paul Kavanaugh, Jack Noonan, James Quella, Claude Sheer, and Marc Litz*

Anne Gaza, Elena Norman, Robert Vrana, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; Adam Humann, KIRKLAND & ELLIS LLP, New York, New York; Joshua Rabinovitz, KIRKLAND & ELLIS LLP, Chicago, Illinois; K. Ross Powell, KIRKLAND & ELLIS LLP, Washington, D.C.; Dustin Hillsley, AKERMAN LLP, Fort Lauderdale, Florida

*Counsel for Defendants H.I.G. Capital LLC, LBT Acquisition, Inc., and Lionbridge Technologies Inc.*

**MEMORANDUM OPINION**

March 19, 2020
Wilmington, Delaware

_____
                    COLM F. CONNOLLY
                 UNITED STATES DISTRICT JUDGE

Lead Plaintiff Laborers' Local #231 Pension Fund brought this class action on behalf of itself and all other former stockholders of Lionbridge Technologies, Inc. against Lionbridge, the Lionbridge board members, and certain of Lionbridge's executives (collectively, the Lionbridge Defendants), as well as H.I.G. Capital L.L.C. and HIG's affiliate, LBT Acquisition Inc. (collectively, the Buyer Defendants). D.I. 34 ¶ 1. The suit arises out of the vote by Lionbridge stockholders in 2017 to merge Lionbridge into an HIG subsidiary.

The Pension Fund alleged in its First and Second Amended Complaints that the January 2017 proxy statement (the Proxy) issued by Lionbridge to gain stockholder approval for the merger contained numerous false statements and omissions. The Pension Fund alleged that as a result of those false statements and omissions the Lionbridge Defendants violated § 14(a) of the Securities Exchange Act of 1934 and the Lionbridge board members, the named Lionbridge executives, and the Buyer Defendants were liable for this violation as "controlling persons" under § 20(a) of the Exchange Act. D.I. 34 at 32, 34.

Judge Kearney, who was previously assigned this case, dismissed the Pension Fund's First Amended Complaint in March 2018. D.I. 25. Judge Kearney later granted in part and denied in part Defendants' motion to dismiss the Second

Amended Complaint. D.I. 43. Judge Kearney denied the motion to dismiss insofar as the challenged claims were based on the representation that "Lionbridge's Board viewed Union Square Advisors LLC's fairness opinion as a 'positive reason' to approve the proposed merger in the January 2017 definitive proxy statement." D.I. 43 at 1. Judge Kearney granted the motion to dismiss insofar as the challenged claims were "based on all other alleged false or misleading statements or omissions." D.I. 42 at 24.

Discovery has now closed. Pending before me are Defendants' motions for summary judgment. D.I. 188; D.I. 190.

## I. BACKGROUND

Lionbridge is a "translation and localization" business. D.I. 34 ¶ 14. Since 2012, Lionbridge has expanded through an acquisition-based growth strategy.

In early 2016, Lionbridge began fielding inquiries from parties interested in purchasing Lionbridge. D.I. 34 ¶ 40. The Lionbridge Board created a Special Committee of three independent directors to consider the sale of Lionbridge. D.I. 34 ¶ 42. The Board also hired a financial advisor, Union Square, to assist it in identifying potential buyers, conducting due diligence, and negotiating a sale price. D.I. 194, DX1 at 34/187. The Special Committee met with nine potential buyers including HIG, a private equity firm. *Id.* at 34–47/187; D.I. 187 ¶ 2; D.I. 206 ¶ 2.

In mid-2016, Lionbridge and HIG entered into an exclusivity agreement that

required Lionbridge to negotiate only with HIG through mid-December 2016. D.I. 34 ¶ 46. On December 12, 2016, Lionbridge's Board announced that it had reached an agreement, subject to stockholder approval, to merge Lionbridge into an HIG subsidiary in exchange for $5.75 in cash for each Lionbridge share. D.I. 194, DX1 at 12/187; D.I. 187 ¶ 1; D.I. 206 ¶ 1. The $5.75 share price was a 24% premium over the average trading price for Lionbridge's shares in the year before the announcement. D.I. 194, DX 1 at 60/187.

Before announcing the merger, Lionbridge had asked Union Square to provide an opinion as to whether the $5.75 per share merger consideration was fair. *Id.* at 48/187. To help Union Square form its opinion, Lionbridge gave Union Square actual results and financial forecasts that Lionbridge had prepared for 2016 and 2017. *Id.* at 60/187. In forming its opinion, Union Square relied on these forecasts and on additional projections Union Square made for 2018 through 2020 that were based in part on Lionbridge's forecasts. *Id.* at 60–61/187. The financial forecasts and additional projections, collectively referred to as the Management Financial Projections, did not account for future acquisitions. D.I. 189 at 10; D.I. 207 at 16. Union Square found that HIG's $5.75 per share offer was "fair." D.I. 194, DX1 at 51/187.

After the announcement of the merger agreement, Lionbridge's Board embarked on a 45-day "go-shop" process through which it could search for a better

offer and, if it found one, accept that offer instead of HIG's offer. *Id.* at 46/187; D.I. 187 ¶ 4; D.I. 206 ¶ 4. The Board, with Union Square's assistance, engaged with 27 potential buyers, none of which made an offer. *Id.*

After the conclusion of the go-shop process, the sale of Lionbridge remained contingent on the approval of the proposed merger by Lionbridge stockholders. D.I. 194, DX1 at 10/87. Lionbridge's Board solicited stockholder votes through the Proxy. D.I. 194, DX1; D.I. 187 ¶ 5; D.I. 206 ¶ 5. Lionbridge stated in the Proxy that the Board unanimously recommended that stockholders vote in favor of the merger. D.I. 194, DX1 at 51/187; D.I. 34 ¶ 69. It further stated that "in reaching [their] decision to approve the merger agreement, including the merger, and to recommend that the Lionbridge stockholders vote in favor or approval of the merger agreement[ ]," the Board and the Special Committee "determined that" Union Square's opinion that the $5.75 per share price was "fair" was one of 14 "positive reasons to support the merger agreement." D.I. 194, DX1 at 48/187.

On February 28, 2017, the Lionbridge stockholders voted to approve the merger and the merged closed.

## II. LEGAL STANDARDS

### A. Legal Standards for Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in

5

the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

### B.   Legal Standards for § 14(a) and § 20(a) of the Exchange Act

Section 14(a) of the Exchange Act prohibits soliciting a shareholder's vote "in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78n(a)(1). Securities and Exchange Commission Rule 14a-9 implements §14(a). Rule 14a-9 prohibits the solicitation of a shareholder's vote through a communication "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9(a). Thus, to establish that a proxy violates §14(a), the plaintiff must prove (1) that the proxy contained a false or misleading statement; (2) that the misstatement

6

was material; (3) that the misstatement caused the plaintiff's loss; and (4) that the plaintiff suffered damages. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007).

To establish a violation of § 20(a) of the Exchange Act, a plaintiff must prove that a third party under the defendant's control violated the Exchange Act. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013).

## III. DISCUSSION

As a result of Judge Kearney's prior decisions, the only potentially actionable representation in the Proxy is that the Lionbridge Board viewed Union Square's fairness opinion as a "positive reason" to approve the proposed merger. Defendants argue that the undisputed record evidence establishes that this representation was neither false nor misleading and that the Pension Fund's securities claims therefore fail as a matter of law. I agree.

As an initial matter, the Lionbridge directors uniformly testified that they believed the Union Square opinion was a positive reason supporting their decision to recommend the merger notwithstanding the fact that the projections on which Union Square relied did not account for future acquisitions. D.I. 187 ¶ 10; D.I. 194, DX28 at 76:23–77:2, DX29 at 134:13–34:17, DX30 at 127:3–27:6, DX31 at 168:22–69:8, DX44 ¶ 5, DX45 ¶ 5, DX46 ¶ 5, DX47 ¶ 5. The Pension Fund argues that whether the Board actually believed the Union Square opinion was a

7

positive reason supporting its decision is a disputed fact. D.I. 206 ¶ 10. But the only evidence that the Pension Fund cites to support its argument are statements that suggest that certain Board members were not enthusiastic about the $5.75 sale price generally. *See* D.I. 210, PX21 at 2276–77, PX52, PX14. The cited statements do not suggest that any Board member thought the Union Square opinion did not support the Board's decision to recommend the merger. Indeed, the cited statements do not mention Union Square's analyses or its opinion. Thus, no genuine dispute of fact exists with respect to whether the Board members actually believed that the Union Square opinion was a positive reason that supported the merger agreement.

Nonetheless, even if a board actually and sincerely held an opinion disclosed in a proxy, that opinion statement can still be misleading under the securities laws if the proxy "omits material facts about the [board's] inquiry into or knowledge concerning [the] statement of opinion." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015). In this case, the Pension Fund argues that the Proxy "omitted a material fact—that the [Management Financial Projections on which Union Square relied] did not assume any acquisitions—and that this omission rendered materially misleading the Board's opinion statement that the Union Square fairness opinion was a 'positive reason' for its support of Lionbridge's sale to HIG." D.I. 207 at 1. The Proxy itself,

8

however, belies the premise of this argument. The Proxy explicitly disclosed that "the forecasts d[id] not take into account any . . . transaction . . . occurring after the dates on which the forecasts were prepared," D.I. 194, DX1 at 62/187, and it explicitly disclosed that the Management Financial Projections were based on the forecasts, *id.* at 60–61/187. Thus, the Proxy disclosed that any future acquisitions (anticipated or not) were not considered in making the Management Financial Projections on which Union Square relied in forming it fairness opinion.

The Pension Fund argues that Judge Kearney "already rejected" the conclusion that the Proxy disclosed that future acquisitions were excluded from the Management Financial Projections, and that "[t]o the extent this question of Proxy interpretation is a question of law, [Judge Kearney's ruling] is the law of the case." D.I. 207 at 25. The law-of-the-case doctrine, however, does not apply to interlocutory orders, even when those orders are decided by a predecessor judge from the same court before the case was transferred. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017). Judge Kearney's denials of Defendants' motion to dismiss were interlocutory orders. *Bell Atlantic–Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 343 (3d Cir.2001) ("The denial of a motion to dismiss does not end the litigation and ordinarily is not a final order"). Therefore, his characterizations of the Proxy statement are not the law of the case and it is within my discretion to disagree with those characterizations.

Judge Kearney explained his decision to deny Defendants' motion to dismiss as follows:

> While a close call, at this preliminary stage we find Lionbridge's belief Union Square's fairness opinion is a positive reason supporting its decision to approve the merger may be an actionable statement under Section 14.
>
> . . .
>
> Lionbridge argues the proxy statement disclosed the projections did not incorporate potential growth through acquisitions. Lionbridge cites language in the proxy statement: "the forecasts do not take into account any circumstances, transactions, or events occurring after the dates on which the forecasts were prepared." But the proxy also states, "The forecasts reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on actual results, revised prospects for our business, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared." Based on the latter representation, Lionbridge incorporated "anticipated" transactions into the forecasts which an investor may read to mean Lionbridge incorporated into the forecasts acquisitions it anticipated making at the time it created the forecasts.

D.I. 42 at 18.

The relevant provision in the Proxy consists of two back-to-back sentences:

> The forecasts reflect assumptions that are subject to change and are susceptible to multiple interpretations and periodic revisions based on actual results, revised prospects for our business, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated when the forecasts were prepared. In addition, the forecasts do not take into account any

> circumstances, transactions or events occurring after the
> dates on which the forecasts were prepared.

D.I. 194-1, DX1 at 62/187. In my view, even if, as Judge Kearney held, "an investor may read" the ambiguous first sentence "to mean [that] Lionbridge incorporated into the forecasts acquisitions it anticipated making at the time it created the forecasts," D.I. 42 at 18, the second sentence and the fact that it follows the first sentence (and therefore clarifies any ambiguity in the first sentence) make clear to a reasonable investor that the forecasts (and thus the Management Financial Projections based on those forecasts) did not take into account future acquisitions. In sum, the Proxy expressly disclosed (and thus did not omit) the fact that future acquisitions were not considered in preparing the forecasts on which Union Square relied.

Because the Proxy's representation that the Lionbridge Board viewed Union Square's fairness opinion as a positive reason to approve the proposed merger was neither false nor rendered misleading by a material omission, the Pension Fund's § 14(a) claim fails as a matter of law. *Tracinda*, 502 F.3d at 228. Because the § 14(a) claim fails, the Pension Fund's § 20(a) claim fails as well. *See Belmont*, 708 F.3d at 484 ("Under the plain language of [§ 20(a)], plaintiffs must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the [Exchange] Act." (citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, I will grant the Lionbridge Defendants' and the Buyer Defendants' summary judgment motions.

The Court will enter an Order consistent with this Memorandum Opinion.